### PEOPLE v. METROPOLITAN TRACTION CO. et al.

(Court of General Sessions, New York County.   May, 1897.)

1. INDICTMENT—DISMISSAL—GROUNDS—STATUTE.
    An indictment may be set aside for a proper cause, other than one of those specified in Cr. Code, § 313, viz. when it is not found, indorsed, and presented as prescribed in sections 268 and 272, and when a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except as provided in sections 262–264.

2. SAME—GRAND JURY—PROCEEDINGS.
    Under Cr. Code, § 256, which provides that "the grand jury can receive none but legal evidence," the admission of evidence before the grand jury which would not be competent on trial before the traverse jury, and which must necessarily have had some influence in bringing about the indictment, is cause for dismissing the indictment.

3. SAME.

An indictment was dismissed where there was no proof before the grand jury connecting defendant with the offense charged, and where there was competent proof that defendant could not have committed the alleged crime.

4. SAME—NUISANCE—EVIDENCE.

An indictment against a street railway for maintaining a nuisance, in that it ran its cars at a dangerous rate of speed around a curve at a street intersection, is not sustained by evidence that in the course of two years 12 or 15 accidents occurred at such place, when there is nothing connecting defendant with the accidents.

Prosecution against the Metropolitan Traction Company and the Metropolitan Street-Railway Company for maintaining a nuisance. On motion to dismiss indictment. Sustained.

W. M. K. Olcott, Dist. Atty. (John D. Lindsay, of counsel), for the People.

H. A. Robinson (Geo. E. P. Howard, De Lancey Nicoll, and Elihu Root, of counsel), for defendants.

McMAHON, J. This is a motion to set aside the indictment filed on the 29th day of January, 1897, against the two defendant corporations, the Metropolitan Traction Company and the Metropolitan Street-Railway Company. The offense charged against both defendants is that of maintaining a nuisance "at all the times from the 16th day of January, 1897," up to the date of the indictment, by "hauling, driving, and propelling divers street cars around a turn or curve on the line of its road, situated at Fourteenth street and Broadway, in the city of New York, at a high and unlawful rate of speed, whereby the public highway was greatly and unlawfully interfered with, obstructed, and rendered dangerous for passage." The motion is brought on the behalf of the defendant corporations upon these grounds: First, that the grand jury received other than legal evidence; and, second, that the indictment was found by the grand jury without sufficient evidence.

It is contended on behalf of the people that the court has not the power to set aside the indictment for any other cause than one of those specified in section 313 of the Code of Criminal Procedure, which reads as follows:

"Sec. 313. The indictment must be set aside by the court in which the defendant is arraigned, and upon his motion, in either of the following cases: (1) When it is not found, indorsed and presented as prescribed in sections 268 and 272; (2) when a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except as provided in sections 262, 263 and 264."

Neither of these causes appears in the present case.

It is unnecessary to discuss at length the rule of construction referred to in one of the earlier cases (People v. Petrea, 92 N. Y. 128), in which the court stated that the Code, in defining the causes for which an indictment may be set aside, must be held to exclude the entertaining of a motion for other causes than those specified in section 313. While this was, in substance, the language of the court of appeals, it is to be remembered that the question at issue there was not on a motion to set aside an indictment, but came up on a plea or objection based upon a defect in the

proceedings in drawing the grand jury which found the indictment. On a motion similar to the one under consideration,—People v. Brickner (O. & T.) 15 N. Y. Supp. 528,—Judge Rumsey used the following language:

"If the motion to set aside cannot now be made for the violation of the rules of the section cited above, the defendant has no remedy for it, and that surely opens the way to evils not to be endured. So far as the decisions of the court go since the Code, there has been no case denying the power of the court to set aside the indictment, on motion, for causes other than those specified in section 313. The first case cited to that point is People v. Gaslight Co. (Gen. Sess.) 5 N. Y. Supp. 19, decided by the court of general sessions of New York. The motion was made before the defendant was arraigned by counsel, who appeared especially for that purpose. The court held that for that reason the motion must be denied, as well as upon the further ground that it was not founded upon any of the grounds specified in the section (Code Cr. Proc. § 313). But he does not consider the question whether the motion can be made upon other grounds, nor does he attempt to decide it. The dictum of Judge Andrews in People v. Petrea, 92 N. Y. 128, is not controlling. The case had been decided on the merits, and what was thrown in at the end of the opinion was not necessary to its determination. In such a case it has been said, 'It is only on points necessarily involved in the determination of causes that the judgments of even the highest appellate courts furnish authoritative adjudication.'"

In another case, in the county court of Kings county,—People v. Vaughan (Co. Ct.) 42 N. Y. Supp. 959,—Judge Hurd calls attention to the fact that there is another section (671) in the Criminal Code providing for the dismissal of an indictment in furtherance of justice, and this section has been held sufficient to warrant such an application. In People v. Clark (O. & T.) 14 N. Y. Supp. 644, Judge Van Brunt cites the cases in which indictments have been set aside for causes other than those specified in section 313, and adds:

"The fact that the provisions of the Code, if construed according to the well-established canons of statutory construction, would in many cases be subversive of justice, and deprive defendants of constitutional and statutory rights, and enable a grand jury, by its indictment, to work the grossest injustice, has impelled the courts to entertain these motions, and give defendants those rights which they had always, prior to the adoption of the Code, enjoyed. In all these cases it has been assumed, and rightly so, that sound reasons of public policy demand that the court should have the power of passing upon preliminary questions respecting the legality of indictments, and that to prevent oppression, wrong, and outrage, it is absolutely necessary that over all the preliminaries preceding a trial there should be the same judicial control as of the proceedings of the trial itself."

A complete illustration of the force and soundness of this view as to the power and duty of the courts is to be found in the case under consideration, where, as to one of the defendants, the Metropolitan Traction Company, it appears that an indictment was found, not only without one word of evidence connecting, or tending to connect, this particular defendant with the offense alleged, but in the face of direct, clear, and competent proof that the Metropolitan Traction Company did not at any time, and does not now, run, own, or control any cars on any line of road in the city of New York, and therefore could not possibly have committed the offense charged in the indictment. To compel this defendant to go to trial under the circumstances would be unjust and oppressive. From the cases quoted and referred to in the briefs submitted by counsel, it is clear that it is now regarded as the settled law,

and is the uniform practice, that an indictment may be set aside
for proper cause, other than those specified in section 313 of the
Criminal Code.

The first ground urged in support of the motion is that the grand
jury received other than legal evidence. I have carefully examined
the minutes of the grand jury, and find that certain testimony
given before that body would not be admissible on the trial of
an indictment. Section 256 of the Code of Criminal Procedure pro-
vides that "the grand jury can receive none but legal evidence."
In People v. Moore, 65 How. Prac. 177, it is expressly held that no
evidence should be presented to the grand jury which would not
be legal and competent on the trial before the traverse jury; and
it seems clear that if such evidence was received, and was of such
a nature as to influence in any degree the result of the delibera-
tions of the grand jury, the indictment should be set aside. Judge
Fursman, in People v. Lindenborn (N. Y. Sup. Ct., Criminal Part,
Feb., 1897, MS. Op.), clearly states what seems to be the true rule:

"It is perhaps true that an indictment may properly be found, where there is
sufficient legal evidence to authorize it, notwithstanding improper evidence has
also been received; but in this case it is apparent, I think, that the grand jury
must have given weight to the improper evidence presented, and acted upon it,
in the final determination reached."

If the evidence claimed to be illegally received by the grand jury
was of such a nature that it clearly could not influence the re-
sult, and if there was sufficient legal evidence, in the judgment of
the grand jury, to sustain the indictment, the court should not
interfere. In the present case, however, the evidence claimed to
be illegal and inadmissible goes to the very essence of the offense
charged, and, if admissible, would certainly be competent as tend-
ing to prove the allegations on which the indictment was based.
The testimony referred to is that of Capt. Groo, of the Fifteenth
precinct, to the effect that there were "many complaints of per-
sons being injured by being struck by the cars at that place," and
that, from the list of cases reported in the station house by differ-
ent persons, he found 10 such cases since April last. This testi-
mony, being mere hearsay, would, of course, be excluded on the
trial of the indictment. Another officer swears directly that, in
the two years in which he was on duty at the curve at Fourteenth
street, 12 or 15 accidents occurred; that none of them were fatal,
—"slight scalp wounds, and the like." The testimony is undoubt-
edly legal and competent, and might have been sufficient to sus-
tain the indictment, if it stood alone, and if it had been shown in
addition that these accidents were the result of any unlawful ac-
tion upon the part of the defendant corporations. The testimony
of Capt. Groo, to which objection is made as illegal, is the only
testimony in the case which would tend to connect these accidents
with the defendant corporations, as he refers to "persons being
injured by being struck by cars at that place"; and, if it had such
an effect upon the minds of the grand jury, it would be cause for
the dismissal of the indictment. Other hearsay testimony was ad-
mitted, which it is unnecessary to discuss, further than to say it

is certainly of such a nature as to have necessarily had some influence in bringing about the indictment, as tending to connect one, at least, of the defendant corporations with the maintenance of the nuisance charged, and as tending to show that the rate of speed at which the cars were run was contrary to law or ordinance, and therefore violated the provisions of the Penal Code.

The second ground urged in support of the motion to set aside is that the indictment was found by the grand jury without sufficient legal evidence. Section 385 of the Penal Code defines a "public nuisance" as "a crime against the order and economy of the state," which consists in unlawfully doing an act, etc., which "(1) annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or * * * (3) unlawfully interferes with, obstructs, or tends to obstruct or render dangerous for passage * * * a public * * * street or railway; or (4) in any way renders a considerable number of persons insecure in life or the use of property." The danger or insecurity to life or property in the present case is supposed to arise from the "high and unlawful rate of speed, whereby a public highway was greatly and unlawfully interfered with, obstructed, and rendered dangerous for passage," etc. The testimony shows that cars were operated by one of the defendant corporations around the curve at Fourteenth street at a rate of speed which, in the opinion of witnesses, was between seven and eight miles per hour. (As a fact, it was shown to be seven miles; this being the speed of the cable.) There is nothing to show that this rate of speed was in itself unlawful. In fact, the chief law officer of this city, in a communication under date of June 11, 1896, bearing upon this very subject, addressed to the board of police, states as follows:

"Provisions as to the rate of speed of various vehicles in the city of New York can be found in the consolidation act and in the ordinances, but it will be very difficult to make the provisions of these statutes and ordinances, which were made under entirely different circumstances, apply to rate of speed of public cars. For instance, the provision of the consolidation act (section 1932) only applies to a 'person who shall drive or ride any horse through any street,' etc. The City Ordinances (section 22 of article 4 of chapter 8) provide: 'It shall not be lawful for any cart, wagon, coach, public cart or any other vehicle to be driven through any of the streets of the city of New York at a greater speed than five miles an hour; nor shall it be lawful for any such vehicle to be driven around the corner of any of the streets of said city with the horse or horses thereto traveling at a faster gait than three miles per hour.' It will be perceived that, while the provisions as to the rate of speed of this ordinance might be made applicable to the cable cars, yet the reduced speed required in turning corners only applies to vehicles drawn by horses."

The only legal testimony as to the number of accidents that occurred at this point was that of the police officer who was on duty there for two years from 8 to 6 o'clock every day. He states that in that time 12 or 15 persons received, at or near that place, slight wounds or injuries. Another witness testifies that one person lost his life, but it was not at the point complained of, but some distance from it, and on the straight line, not on the curve; that he seemed to be under the influence of liquor, and lost his life, apparently, through his own negligence. It is a matter of notoriety

that at least 50,000 persons daily pass over or cross the tracks of the Metropolitan Street-Railway Company at or near the Fourteenth street curves, and that a number of other railroads meet or intersect at that place. There was no evidence whatever before the grand jury that the 12 or 15 accidents testified to by the police officer were occasioned by the fault or failure of the defendant corporations, or either of them. There was evidence also before the grand jury that a large number of accidents occurred at this point within the same space of time when the road was operated as a horse railroad, and when the traffic was considerably less. Whether injuries received by 15 persons in two years, out of 36,000,000 who passed over or crossed the tracks during that time at that point, could be taken as competent proof that the operation of the road "rendered a considerable number of persons insecure in life or the use of property, or endangered the repose, health, or safety of any considerable number of persons," was a matter, of course, for the grand jury to determine on the evidence; but it is unnecessary to discuss it here, inasmuch as there is an absolute lack of any evidence to connect the defendants, or either of them, with the happening of the accidents, further than the circumstances that the defendants, or one of them, operate cars at that point, as do other corporations, and that the injuries resulting from the accidents were received there.

The motion is granted as to the defendant the Metropolitan Traction Company, for the reason, as heretofore stated, that there was no proof before the grand jury connecting it with the offense alleged, but, on the contrary, competent proof that this corporation did not and could not have committed the crime charged. The motion is granted as to the Metropolitan Street-Railway Company on both of the grounds urged by counsel for the defense,—that illegal evidence was received by the grand jury, of such a nature as clearly to influence the finding, and also because of the lack of any evidence to connect this defendant with the acts or happenings relied upon to sustain the charge.

Since this motion was submitted, and while under advisement, section 313 of the Code of Criminal Procedure has been amended by adding the words "but in no other," so that the first paragraph reads as follows:

"Sec. 313. Indictment, When Set Aside on Motion. The indictment must be set aside by the court in which defendant is arraigned, and upon his motion, in either of the following cases, but in no other."

Then follow subsections 1 and 2, as quoted above. The added words work an entire change in the law; but, as another section of the amended Code provides that this amendment is not to affect pending proceedings, it is unnecessary to consider it here, or to pass upon what its effect may be upon future motions of this character. It may be remarked, however, that the adoption of this amendment at this time clearly indicates that in the opinion of the legislature the courts heretofore possessed the power claimed therein,—of dismissing indictments for other than the causes enumerated in section 313.